IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOHN FARNSWORTH,<br><br>    Plaintiff,<br><br>    vs.<br><br>CAROLYN W. COLVIN,<br>**Acting Commissioner of Social Security,**<br><br>    Defendant. | MEMORANDUM DECISION<br>    &    ORDER<br><br>Case No. No. 2:15-cv-00427<br><br>Magistrate Judge Dustin B. Pead |

INTRODUCTION

As an initial matter, all parties in this case have consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeal for the Tenth Circuit (ECF No. 14.) *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

Pursuant to 42 U.S.C. § 405(g), Plaintiff John Farnsworth (Plaintiff or Mr. Farnsworth), seeks judicial review of the decision of Defendant, Acting Commissioner of Social Security (Commissioner), denying his claims for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (the Act). Accordingly, after careful review of the entire record, the parties' briefs, and arguments presented at the hearing held on August 10, 2016 (ECF No. 20), the court concludes that the Commissioner's decision is supported by substantial evidence and free of harmful legal error and is, therefore, AFFIRMED.

Page 1

**STANDARD OF REVIEW**

The court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation omitted).  The court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."  *Id.* (citation omitted).  Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

**BACKGROUND**

Mr. Farnsworth was 37 years old in July 2011, when he claimed disability based on bipolar disorder, a learning disability, arthritis, and hearing loss, among other conditions (Tr. 193, 233).  He completed two years of college and had past relevant work as a data entry clerk, stores laborer, mail clerk, and bindery worker (Tr. 234-35, 321).  In evaluating his case, the ALJ followed the familiar five-step sequential evaluation process (Tr. 10-30).  *See generally* 20 C.F.R. § 404.1520(a)(4).  As relevant here, the ALJ found that Mr. Farnsworth had severe impairments (conductive hearing loss of the right ear, some hearing loss of the left ear, affect/mood disorders, and bipolar disorder), but that he retained the residual functional capacity (RFC) to perform a range of unskilled work at all exertional levels consistent with the ALJ's hypothetical to the vocational expert (Tr. 15-16).  The ALJ also found that Mr. Farnsworth was capable of performing other work existing in significant numbers in the national economy and, therefore, was not disabled under the Act (Tr. 28-30).

On appeal, Mr. Farnsworth asserts that his mental impairments met or medically equaled a Listing. He also challenges the ALJ's evaluation of the medical source opinions and his credibility. In addition, Mr. Farnsworth alleges that the ALJ erred in finding that he could perform other work existing in significant numbers in the national economy. However, after considering all of the record evidence, the ALJ reasonably concluded that Mr. Farnsworth's allegations were not entirely credible and that Plaintiff retained the RFC to perform unskilled work at all exertional levels with additional physical and mental restrictions (Tr. 16-28). The Court finds and concludes that the ALJ's findings are supported by substantial evidence.

## ANALYSIS

The court addresses each of the arguments raised by Mr. Farnsworth in his appeal.

I.   **The ALJ reasonably concluded that Plaintiff's mental impairments did not meet a Listing.**

At step three of the sequential evaluation process, the ALJ found Mr. Farnsworth did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments at 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 13-15). Mr. Farnsworth contends this was in error because his mental impairments met Listings 12.02 (Organic mental disorders) and 12.10 (Autistic disorder and other pervasive developmental disorders) (Pl. Br. 12-18).

Plaintiff has the burden at step three of the sequential evaluation to provide medical evidence demonstrating that his impairments met or medically equaled a Listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Meeting or equaling the requirements of a Listing at step three of the sequential evaluation process is "a very high standard." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "For a claimant to show that his impairment matches a listing, it must meet ***all*** of the

Page 3

specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "To show that an impairment or combination of impairments meets the requirements for a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085 (citing 20 C.F.R. § 404.1525). In the present case, Mr. Farnsworth failed to meet his burden to show that he met either Listing 12.02 or 12.10.

As the Commissioner correctly notes, both Listing 12.02 and 12.10 require a showing that Plaintiff meets the B criteria.[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.02, 12.10. Mr. Farnsworth's arguments focus on the fact that he was diagnosed with Asperger syndrome and a mood disorder, in an attempt to demonstrate that he meets these Listings (Pl. Br. 14-15). However, Plaintiff fails to address the B criteria, and the ALJ properly found that Mr. Farnsworth did not satisfy the B criteria (Tr. 14).

To satisfy such criteria, Plaintiff's mental impairments must result in marked limitations in at least two out of four broad functional areas. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.02, 12.10 (part B). The ALJ found, however, that Mr. Farnsworth did not have marked limitations in *any* area. The ALJ determined that Mr. Farnsworth had only mild restrictions in his activities of daily living, relying on the fact that he remained able to care for his personal hygiene, cook meals, perform a full range of household and yard chores, shop, and drive himself or his daughters to appointments (Tr. 14; *see* Tr. 262-65, 279). The ALJ also found that Mr.

---

[1] While the ALJ explicitly discussed only the B criteria of Listing 12.04, they are the same B criteria required for Listings 12.02 and 12.10 (Tr. 14). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.02, 12.10.

**Page 4**

Farnsworth had moderate difficulties with regard to social functioning, noting that Plaintiff had a tendency to be impulsive when communicating with others (Tr. 14; *see* Tr. 266-67). However, Mr. Farnsworth remained able to volunteer, play in a "Dungeons and Dragons" group, and attend church once a week (Tr. 282). The ALJ found that Mr. Farnsworth had moderate difficulties in concentration, persistence, or pace, as he could get distracted when working around many people or working in a small cubical (Tr. 14; *see* Tr. 268). Yet again, Mr. Farnsworth remained able to volunteer and perform other activities requiring concentration (Tr. 282). Finally, the ALJ reasonably found that there was no evidence that Mr. Farnsworth had experienced episodes of decompensation that were of extended duration (Tr. 14).

In addition, Drs. Finley and Kjolby, state agency psychologists with expertise in the Social Security listings, specifically found that Mr. Farnsworth's impairments did not meet the B criteria of the mental health listings (Tr. 106, 116-17). *See* Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *3 (noting that a state signature of a State agency medical or psychological consultant on an SSA-831-U5 [Disability Determination and Transmittal Form] ensures that consideration by a physician or psychologist designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review). Therefore, the court finds that the record contains abundant support for the ALJ's finding that Mr. Farnsworth's impairments were not severe enough to satisfy a mental health listing such as Listing 12.02 or 12.10.

In turn, Mr. Farnsworth argues that the ALJ should have specifically considered whether Plaintiff met Listings 12.02 or 12.10 (Pl. Br. 15-16). But, as discussed, the ALJ found that Plaintiff did not experience any marked limitations (Tr. 14), precluding him from meeting either

**Page 5**

of these Listings.  20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.02B, 12.10B.  Thus, the Court finds that the ALJ's step three analysis is sufficient for judicial review.

## II.     The ALJ reasonably evaluated the medical source opinions.

Next, Plaintiff asserts that the ALJ "failed to properly evaluate Dr. Daley's opinion," claiming that the ALJ "rejected this opinion" (Pl. Br. 18-20). The court, however, disagrees and finds that the ALJ reasonably weighed all of the medical source opinions, and the ALJ's treatment of the medical source opinions does not support Mr. Farnsworth's request for remand. *See* 20 C.F.R. § 404.1527.

Dr. Daley authored three opinions (January 2012 (Tr. 333), February 2013 (Tr. 382), and July 2013 (Tr. 404), which the ALJ specifically and thoroughly discussed (Tr. 23-25).  In doing so, the ALJ concluded that Dr. Daley "changed his original February 19, 2013 assessment by downgrading the severity of [Plaintiff's] mental limitations in his July 8, 2013 report" (Tr. 24).  Indeed, in February 2013, Dr. Daley opined that Mr. Farnsworth's mental limitations would preclude his performance of certain abilities for 15% or more of an eight-hour workday in seven different categories (including understanding and remembering detailed instructions and maintaining attention and concentration for extended periods of time) (Tr. 382-83).  However, in July 2013, Dr. Daley opined that Mr. Farnsworth's mental abilities would preclude his performance for 5% to 10% of an eight-hour workday in all areas, and did not find that there were any areas in which Plaintiff would be precluded for 15% or more of an eight-hour workday (Tr. 404).  Additionally, in February 2013, in response to the question "[d]o you believe . . . that your patient, because of his[] medical impairments and physical and/or mental limitations, is unable to obtain and retain work in a competitive work setting, eight hours per day, five days per week," Dr. Daley answered "depends on the job" (Tr. 384).  However, when asked

**Page 6**

this same question in July 2013, Dr. Daley answered "no" (indicating that he believed that Plaintiff was able to work) (Tr. 406). Based thereon, the court finds that the ALJ reasonably relied on the fact that Dr. Daley's own opinions showed that Mr. Farnsworth's mental impairments improved between February and July of 2013 (Tr. 24).

Further, the ALJ did not "reject" these opinions. Instead, the ALJ accorded partial weight to Dr. Daley's opinions and incorporated many mental limitations into his RFC assessment, including:

- Unskilled work;
- Working at a slow stress level, which means a low production level, no working with the general public, and no crowds of co-workers;
- Only occasional contact with supervisors and co-workers on the job, but still having the ability to respond appropriately to supervision, co-workers, and typical work situations;
- The ability to deal with only occasional changes in a routine work setting;
- The ability to understand, remember, and carry out only "simple" work instructions;
- The ability to remember and deal with only rare changes in work instructions from week to week; and
- The ability to remember and use appropriate judgment in making only "simple" work related decisions

(Tr. 16, 24). Thus, the ALJ's RFC assessment was consistent with the limitations Dr. Daley assigned in his most current opinion (Tr. 404-05). Indeed, the ALJ specifically notes that his RFC assessment was "very limited and allows for the restrictions and limitations noted by Dr. Daley" (Tr. 25).

To the extent that Dr. Daley's earlier opinions suggest that Mr. Farnsworth was more limited than found by the ALJ's RFC assessment, the court finds that the ALJ reasonably concluded they were only entitled to partial weight (Tr. 25). In the decision, the ALJ discusses Dr. Daley's treatment notes, which indicate that Mr. Farnsworth's mood was stable, his cognition was intact, his mental status examinations were normal, his symptoms were well-managed with medication, and he was much improved from his initial visit (Tr. 19-21;

**Page 7**

*see* Tr. 349, 353, 359, 364, 366, 368, 379, 407).  Dr. Daley's progress notes did not indicate any problems with Plaintiff being off task, and Plaintiff did not quantify the type of difficulties that Dr. Daley noted in his opinions (Tr. 24-25).  The court concludes the ALJ reasonably discounted these opinions to the extent they indicated greater limitations than assessed by the ALJ.  *See* 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider consistency); *Newbold v. Colvin*, 718 F.3d 157, 1266 (10th Cir. 2013) (affirming the ALJ's decision discounting the treating physician's opinion where the doctor's treatment note from the same day was inconsistent with the doctor's opinion).

Thus, after considering the medical source opinions and the record as a whole, the ALJ reasonably determined that Mr. Farnsworth retained the RFC to perform unskilled work with many additional restrictions (Tr. 15-16).  The ALJ provides a narrative discussion describing how the evidence supports his conclusions and cites to specific medical facts and non-medical evidence (Tr. 16-28).  *See* SSR 96-8p, 1996 WL 374184, at *7.  Consistent with SSR 96-8p, the ALJ explains how he considered and resolved inconsistencies or ambiguities in the evidence and explains his evaluation of Plaintiff's symptom testimony and the medical source opinions.  *See id.*  It is not the role of the court to re-weight the evidence and the court finds substantial evidence supports the ALJ's decision. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).

### III.    The ALJ reasonably found that Plaintiff could perform work that exists in significant numbers in the national economy.

Finally, Mr. Farnsworth argues that the ALJ erred at step five of the sequential analysis

**Page 8**

when he concluded that Plaintiff could perform jobs that existed in significant numbers in the national economy.

At the hearing, the ALJ posed a hypothetical question that reflected all the limitations he included in his RFC assessment (*compare* Tr. 15-16 *with* Tr. 321-22). Due to computer problems, the ALJ submitted hypothetical questions to the vocational expert through an interrogatory request (Tr. 319). In response, the vocational expert determined that the hypothetical individual could perform the unskilled jobs of hand packager (50,000 jobs), assembler production (80,000 jobs), and cleaner/housekeeper (160,000 jobs) (Tr. 323). The vocational expert indicated that, given the hypothetical, the jobs would be reduced by 75 percent in order to account for all of the limitations assessed by the ALJ (Tr. 323). The expert explained that her "estimated reductions" were "based on her experience visiting and analyzing workplaces/jobs as part of [her] professional job placement and retention services; [her] understanding of how job sites are arranged; [and her] understanding of the essential elements of the work" (Tr. 324).

Upon review, the court finds that, although further clarity may have been helpful, it was valid for the ALJ to rely on the vocational expert's testimony under these circumstances. *See* SSR 00-4p, 2000 WL 1898704, at *2 ("When there is an apparent unresolved conflict between VE or VS evidence and the [Dictionary of Occupational Titles (DOT)], the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." Also noting that a "VE's . . . experience in job placement or career counseling" can be a reasonable explanation for testimony that is inconsistent with the DOT); *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (where there is a conflict between the DOT and a vocational expert's testimony, the DOT

**Page 9**

does not necessarily trump the expert); *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007) (unpublished) ("'[A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation.'" (citation omitted)).

Plaintiff argues that the vocational expert's testimony—based on the ALJ's mental RFC limiting Plaintiff to General Educational Development (GED) reasoning level of one (Tr. 16)—conflicted with the DOT job description for Hand Packager and Assembler Production, because the DOT described these jobs as having a GED reasoning level of two. *See* Dep't of Labor, *DOT*, App. C, § III (4th ed. 1991), *available at* 1991 WL 688702 (describing GED levels); *see also Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development."). Nonetheless, the job of Housekeeper/Cleaner is described by the DOT as only requiring a GED reasoning level of one. *See* DOT No. 323.687-014, 1991 WL 672783. Thus, this job is consistent with the ALJ's hypothetical to the vocational expert. And, although the expert reduced the number of housekeeper/cleaner jobs available by 75% to account for the limitations provided by the ALJ, even with such a reduction 40,000 housekeeper/cleaner jobs would remain available in the national economy (Tr. 323). *See* 20 C.F.R. § 404.1566(a) (work exists in the national economy "when it exists in significant numbers either in the region where you live or in several other regions of the country"); *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirmed the ALJ's decision where substantial evidence showed the claimant could do the third job, and the

Page 10

job existed in significant numbers in the national economy).  As such, the court finds the unskilled job identified by the vocational expert is consistent with RFC assessed by the ALJ and provides substantial evidence in support of the ALJ's step-five finding.  *See Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990) (recognizing a vocational expert's testimony as substantial evidence supporting the ALJ's conclusion the claimant was not disabled).

## CONCLUSION

Because the ALJ's decision is supported by substantial evidence and is free of harmful legal error, it is **AFFIRMED.**  Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 15th day of August, 2016.

_____
DUSTIN B. PEAD
United States Magistrate Judge

Page 11